Richard PECAROVICH Plaintiff,

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

No. CV 99–2129 ABC(MANx).

United States District Court,
C.D. California.

July 14, 2003.

Paul S Sigelman, Deborah K Perlman, Sigelman & Perlman, Beverly Hills, CA, for Richard Pecarovich, plaintiff.

Peter H Klee, Seth M Friedman, Luce Forward Hamilton & Scripps, San Diego, CA, Gerald J Nielsen, Nielsen Law Firm, Metairie, LA, for Allstate Insurance Co, defendant.

ORDER RE: DEFENDANT'S (1) MOTION FOR JUDGMENT ON THE PLEADINGS and (2) MOTION FOR SUMMARY JUDGMENT

COLLINS, District Judge.

AllState Insurance Company's ("Defendant's") motions for judgment on the pleadings and for summary judgment came on regularly for hearing on July 14, 2003. After considering the materials submitted by the parties, argument of counsel and the case file, the Court hereby GRANTS Defendant's Motion for Judgment on the Pleadings and GRANTS Defendant's Motion for Summary Judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Richard Pecarovich ("Plaintiff") brought suit on a Standard Flood Insurance Policy ("SFIP") issued by Defendant pursuant to the National Flood Insurance Act (the "NFIA"). (See Pl.'s Stmnt. in Resp. to

Def.'s Stmnt. of Uncontr. Facts ("Facts"), ¶ 1.) The SFIP was in effect from August 21, 1997 to August 21, 1998 and covered Plaintiff's home, located at 1323 Morningside Drive in Laguna Beach, California ("the Property"). (*Id.* ¶¶ 2, 3.) As a result of damage the Property sustained, Plaintiff submitted a claim to Allstate under the SFIP for over $200,000. (*Id.* ¶ 5.)

The parties are in dispute over Plaintiff's compliance with the SFIP's proof of loss requirements.[1] (*Id.* ¶ 6.) Defendant asserts that Plaintiff never submitted a proof of loss in connection with his claim, in violation of the SFIP's requirement that an insured submit a sworn proof of loss within 60 days of the loss. (Def.'s Stmnt. of Uncontr. Facts ¶ 6.) Plaintiff contends that the SFIP allows Defendant to waive the requirement for completion and filing of a proof of loss, and that an adjuster's report of the loss could be accepted instead. (Facts ¶ 6.) According to Plaintiff, the adjuster's report was never completed because Defendant failed to pay for engineering needed for its completion. (*Id.*)

On February 25, 1999, Plaintiff filed a Complaint against Defendant, alleging causes of action for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) actual and constructive fraud; and (4) negligence.[2] On November 24, 1999, the Court dismissed Plaintiff's negligence claim. On January 24, 2000, the Court dismissed Plaintiff's bad faith and fraud claims and found that Plaintiff's claim for monies due for breach

of contract was moot. Plaintiff filed a notice of appeal to the Ninth Circuit on February 24, 2000. The case was reversed and remanded to this Court on February 24, 2003. In its decision, the Ninth Circuit held that (1) the exclusion for flooding affecting only Plaintiff's property and not the surrounding neighborhood did not apply, (2) the "land movement" exclusion could not bar coverage if loss was within the limited coverage for "land subsidence," (3) Defendant had the authority to grant an exception from the proof of loss requirement and (4) an issue of fact existed as to whether Plaintiff ever properly submitted his claim.

On May 24, 2003, Defendant filed the instant motions for judgment on the pleadings and for summary judgment. Plaintiff filed oppositions on June 18, 2003 and on June 30, Defendant filed its replies.

## II. LEGAL STANDARD

### A. Motion for Judgment on the Pleadings

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). For purposes of such a motion, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir.1989) (citing *Doleman v. Meiji*

1. The parties also dispute the cause of the damage to the Property. (Facts ¶ 4.) That dispute is not relevant to the disposition of the instant motions.

2. Defendant indicates in its motion for judgment on the pleadings that Plaintiff's fraud claim was abandoned on appeal. In his opposition to Defendant's motion for summary judgment, Plaintiff argues that none of his claims were abandoned because of the Ninth

Circuit's reversal and remand of this Court's grant of summary judgment. However, the dismissal of Plaintiff's negligence claim was not affected by the Ninth Circuit's decision. Furthermore, it is apparent from the Ninth Circuit's decision that Plaintiff did not raise the issue of the dismissal of his fraud claim upon appeal and the case was not remanded for determination of that issue. The Court agrees with Defendant that Plaintiff abandoned the fraud claim on appeal.

*Mutual Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir.1984); *Austad v. United States*, 386 F.2d 147, 149 (9th Cir.1967)). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Id.* (citing *Doleman*, 727 F.2d at 1482). "However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment." *Id.* (citations omitted).

**B. Motion for Summary Judgment**

The party moving for summary judgment has the initial burden of establishing that there is "no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978); *Fremont Indemnity Co. v. California Nat'l Physician's Insurance Co.*, 954 F.Supp. 1399, 1402 (C.D.Cal.1997).

If the moving party has the burden of proof at trial (*e.g.*, a plaintiff on a claim for relief, or a defendant on an affirmative defense), the moving party must make a "showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986) (quoting from Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984)). Thus, if the moving party has the burden of proof at trial, that party "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original); *see Calderone*, 799 F.2d at 259. On an issue for which the opposing party will have the

burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings ... [T]he adverse party's response ... **must set forth specific facts** showing that there is a genuine issue for trial." Fed. R. Civ. Pro. 56(e) (emphasis added). A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish the essential elements to that party's case, and on which that party would bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in favor of the nonmovant. *Id.* at 248, 106 S.Ct. 2505. However, the Court must view the evidence presented "through the prism of the substantive evidentiary burden." *Id.* at 252, 106 S.Ct. 2505.

**III. DISCUSSION**

**A. Defendant's Motion for Judgment on the Pleadings.**

Defendant moves for judgment on the pleadings that Plaintiff's bad faith claim is preempted by federal law, as are Plaintiff's prayers for punitive damages and interest. Defendant's argument relies heavily upon *Scherz v. South Carolina Insurance Company*, 112 F.Supp.2d 1000 (C.D.Cal.2000). Plaintiff opposes the motion, arguing that

his claims are not preempted for the reasons set forth in *Davis v. Travelers Property and Casualty Co.*, 96 F.Supp.2d 995 (N.D.Cal.2000).

### 1. *The National Flood Insurance Act.*

In 1968, Congress passed the National Flood Insurance Act (the "NFIA") in order to guarantee that those who need affordable flood insurance can obtain it. The NFIA established the National Flood Insurance Program (the "NFIP"), which provides flood insurance in areas which have the greatest need. The NFIP is run by the Federal Emergency Management Agency ("FEMA"). Because FEMA lacks sufficient resources to administer the NFIP on its own, the Write Your Own ("WYO") program was created to allow private insurers to serve as fiscal agents of the United States and to issue federal flood policies. All flood claims are paid from the United States Treasury, regardless of whether the policy is issued by FEMA or by a WYO insurer. 44 C.F.R., Pt. 62, App. A Art. III(D)(1). The terms of the Standard Flood Insurance Policy ("SFIP") and the procedures for paying and handling claims are dictated by federal regulation to ensure consistency across the country. Under the WYO program, WYO insurers receive a 3.3% commission only if they approve a claim and authorize payment. 44 C.F.R., Pt. 62, App. A. Art. III(C)(1).

### 2. *Plaintiff's State Law Claims Are Preempted by Federal Law.*

Defendant contends that it is entitled to judgment on the pleadings because Plaintiff's state law claim is preempted, because (1) every SFIP expressly states that flood insurance is provided subject to the terms of the NFIA and the regulations promulgated thereunder and (2) under *Wagner v. Director, FEMA*, "the conditions of an insurance policy offered pursuant to a congressionally mandated program, such as

the NFIP, must be strictly observed." 847 F.2d 515, 518 (9th Cir.1988). According to Defendant, the issue before the Court is whether state law claims relating to the manner in which an insurer handles a claim for federal treasury monies are preempted. In Defendant's estimate, express preemption, field preemption and conflict preemption all apply to Plaintiff's bad faith claim.

#### a. *Express Preemption.*

Under the doctrine of express preemption, a given field may be explicitly preempted by a federal statute or regulation. *See English v. General Elec. Co.*, 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). Since October of 2000, every SFIP has included a provision explicitly stating that the "policy and all disputes arising from the handling of the claim under the policy are governed exclusively by [federal law]." *See* 44 C.F.R. Pt. 61, App. A(1) Art. IX (2002). Defendant argues that the absence of this language prior to October of 2000 is not determinative, citing *Barnett Bank of Marion County v. Nelson*, 517 U.S. 25, 31, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996)(even when explicit preemption language does not appear, non-specific statutory language or the statute's structure and purpose may reveal a clear preemptive intent).

Since the inception of the NFIA, federal courts have had original, exclusive jurisdiction for actions based on SFIP claims. 42 U.S.C. § 4072. According to Defendant, the Ninth Circuit made abundantly clear that the changes made to the SFIP in October of 2000 were not substantive and instead merely clarified existing law. *See Pecarovich v. Allstate Ins. Co.*, 309 F.3d 652, 657 n. 7 (9th Cir.2002). Thus, in Defendant's estimate, the claims-handling issues raised by Plaintiff were expressly preempted when raised and con-

tinue to be preempted after the October 2000 amendments to the NFIA.

The Court disagrees. As discussed in *Scherz*, at the time Plaintiff's complaint was filed, the NFIA did not contain an express preemption provision. The fact that an express preemption provision has since been added does not impact claims submitted prior to the amendment. The Court adopts the reasoning of the *Scherz* court with respect to express preemption and finds that the October 2000 amendments cannot control the outcome in the instant case. 112 F.Supp.2d at 1004–1005. Accordingly, Defendant has failed to establish that Plaintiff's claim is barred by the doctrine of express preemption.

b. *Field Preemption.*

■ Under the field preemption doctrine, federal regulation of a given field may be so pervasive that it displaces and preempts state law. *See English*, 496 U.S. at 78–79, 110 S.Ct. 2270. Defendant argues that field preemption also bars Plaintiff's claim. Congress has provided FEMA with the authority to promulgate regulations relating to the adjustment of claims arising under the NFIA. *See* 42 U.S.C. § 4019. WYO insurers are required to comply with FIA policy issuances and other guidance issued by FEMA. *See* 44 C.F.R. Pt. 62, App. A, Art. II(A)(2).

■ The Court finds that Defendant has not established that the field preemption doctrine bars Plaintiff's bad faith claim. As discussed in *Scherz*, it is apparent from the language of the governing regulation itself that certain state law tort claims against WYO insurers are not outside the scope of the arrangement between FEMA and WYO insurers. The section entitled "Limitation of Litigation Costs" provides as follows:

> Following receipt of notice of [a litigation claim against a WYO insurer], the Office of General Counsel (OGC),

FEMA, shall review the information submitted. If it is determined that the claim is grounded in actions by the Company that are outside the scope of [the WYO insurer-FEMA] Arrangement, the [NFIA], and [governing regulations], and/or involve issues of insurer/agent negligence, the OGC shall make a recommendation to the Administrator as to whether the claim is grounded in actions by the Company that are significantly outside the scope of this Arrangement.

44 C.F.R. Pt. 62, App. A. Art. III(D)(4). The Court agrees with the *Scherz* court that this language addressing the determination of whether a claim is "outside the scope" of the WYO insurer-FEMA arrangement is inconsistent with Defendant's assertion that Congress intended the preempt the field. It is apparent from the language of the regulation that not all claims are within the scope of the WYO–FEMA arrangement. Hence, the Court concludes that Defendant has failed to establish that Plaintiff's bad faith claim is barred by the doctrine of field preemption.

c. *Conflict Preemption.*

■ The doctrine of conflict preemption applies "where either 1) it is impossible for a private party to comply with both state and federal requirements or 2) where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *See Scherz*, 112 F.Supp.2d at 1007, citing *English*, 496 U.S. at 79, 110 S.Ct. 2270. Defendant contends that Plaintiff's bad faith claim is barred under the conflict preemption doctrine because WYO insurers cannot comply with both state law standards for handling insurance claims and their obligations to the federal government as fiduciaries and fiscal agents. Specifically, Defendant asserts that state recognition of the tort of bad faith when an insurer unreasonably withholds policy benefits be-

cause of its financial incentive to delay or withhold payment is completely at odds with the NFIP, in which WYO insurers make money only by paying claims, thus creating an incentive for WYO insurers to pay as much as possible. In Defendant's estimate, if this Court were to find that state laws and regulations may be imposed upon WYO insurers to govern their adjustment of NFIP claims, FEMA will lose its ability to control federal disbursements by the WYO insurers, creating an impermissible conflict between state and federal law.[3]

■ In his opposition, Plaintiff contends that his claim is not preempted for the reasons set forth in *Davis*, 96 F.Supp.2d 995 (N.D.Cal.2000).[4] In *Davis*, the district court concluded that the defendant insurer could have complied with state and federal law with no conflict because "[n]o federal law required that [the defendant] guide insureds through the claims process, and no federal law required that [the defendant] omit from its guidance the sworn proof of loss." 96 F.Supp.2d at 1004. The *Davis* court determined that once the insurer undertook to guide the insured plaintiffs through the claims process, it had a duty not to mislead them. *Id.*

Plaintiff's reliance on *Davis* is misplaced. First, it conflicts with the bulk of the cases on the issue. *See* note 3 above. As Defendant points out in its reply, *Davis* is one of only two cases[5] finding that the NFIA did not preempt state law claims arising from SFIP claims handling. Since the decision in *Davis* was issued, it has been criticized and largely disregarded in a host of other NFIA decisions. *See, e.g., Novikov v. Allstate Inc. Co.*, 2001 WL 880852 (E.D.Cal. Jul 11, 2001); *Eaker v. State Farm Fire and Cas. Ins. Co.*, 216 F.Supp.2d 606 (S.D.Miss.2001). Second, *Davis* is in conflict with *Flick v. Liberty Mutual Fire Ins. Co.*, in which the Ninth Circuit specifically stated that "a claim [ ]against [a] WYO Insurer in federal court... is, in reality, a claim against the federal government." 205 F.3d 386, 393 n. 10 (9th Cir.2000).[6]

■ Finally, there is a sufficient basis for finding both impossibility of compliance and frustration of Congress's purposes and

---

3. To support its position, Defendant cites a host of cases in addition to *Scherz* in which courts have found that state law claims arising from the mishandling of SFIP claims were preempted by federal law. *See, e.g., Gibson v. American Bankers Ins. Co.*, 289 F.3d 943, 948–950 (6th Cir.2002); *West v. Harris*, 573 F.2d 873, 879–81 (5th cir.1978); *Berger v. Pierce*, 933 F.2d 393, 394, 397 (6th Cir.1991); *Bianchi v. State Farm Fire & Cas. Co.*, 120 F.Supp.2d 837 (N.D.Cal.2000); *Mason v. Witt*, 74 F.Supp.2d 955 (E.D.Cal.1999).

4. Plaintiff also argues that because the NFIA does not provide for express remedies of its violation, he may seek state law remedies. As a preliminary matter, Plaintiff is not entitled to assert his bad faith claim solely because the NFIA does not provide a cause of action for bad faith. Moreover, as Defendant correctly points out in its reply, Plaintiff has a remedy for the harm he has alleged: he may ask FEMA to waive its rules and limitations and to allow the payment of his claim. *See Flick*

*v. Liberty Mutual Ins. Co.*, 205 F.3d 386, 396 (9th Cir.2000); 44 C.F.R., Pt. 61, App. A(1) Art. 9(D). The fact that Plaintiff has failed to seek this federal law remedy is not in itself a sufficient basis to find him entitled to state law relief.

5. The other, *Stanton v. State Farm Fire and Cas. Co., Inc.*, 78 F.Supp.2d 1029 (D.S.D. 1999), is not implicated here, as the argument in *Stanton* was limited to field preemption.

6. Plaintiff argues that he seeks recovery from Defendant, not the United States Treasury. To that end, Plaintiff requests an order from the Court that Defendant be required to pay Plaintiff without reimbursement from the Treasury. FEMA, not the Court or the parties, determines those circumstances under which a WYO insurer will be reimbursed by the Treasury. Plaintiff's willingness to stipulate that the funds be recoverable only from Defendant is irrelevant.

objectives if Plaintiff is allowed to pursue his bad faith claim, thereby necessitating a finding of conflict preemption, as discussed at length in *Scherz*. Under federal law, "an insured must comply strictly with the terms and conditions of a federal insurance policy," including a SFIP's 60–day proof of loss requirement. *Flick*, 205 F.3d at 390–391. However, under California law, an insurer may not deny a claim based on a defective notice or proof of loss if an insurer has "substantially complied with those conditions." *McCormick v. Sentinel Life Ins. Co.*, 153 Cal.App.3d 1030, 1046, 200 Cal.Rptr. 732 (1984). Clearly, the federal strict compliance standard is at odds with the California substantial compliance one, and a WYO insurer cannot comply with both. Even more persuasive is the frustration of Congressional purpose argument. As indicated in *Scherz*, the possibility that WYO insurers will not be reimbursed presents an obstacle to Congressional goals in enacting the NFIA, as potential exposure to judgments would make WYO insurers more likely to "err on the side of overpaying claims, in an effort to insulate themselves from potential bad faith liability." 112 F.Supp.2d at 1008. This would have the unwanted results of (1) the federal government paying more money to claimants than required and (2) defeating the objective that insurers receive profit only through strict compliance with regulations.[7] *Id.* In addition,

allowing insureds to assert tort claims against WYO insurers would frustrate the NFIA's goal of uniformity by granting different rights to insureds depending on whether their SFIP was issued by FEMA or by a WYO insurer, as the sole remedy for alleged claims-mishandling by FEMA would be a cause of action for breach of contract. *Id.* at 1008–1009. Based on the foregoing, and for the reasons set forth in *Scherz*, the Court finds that the conflict preemption doctrine applies to Plaintiff's bad faith claim. Accordingly, the Court GRANTS Defendant's motion for judgment on the pleadings and DISMISSES Plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing.[8]

3. *Plaintiff's Prayers for Punitive Damages and Interest are Preempted by Federal Law.*

■■■ Defendant contends that if the Court finds that Plaintiff's bad faith claim is preempted, his prayer for punitive damages will be moot as there is no statutory or regulatory support under the NFIA allowing recovery of punitive damages. For support, Defendant cites *Eddins v. Omega Ins. Co.*, 825 F.Supp. 752, 753 (N.D.Miss.1993) and *3608 Sounds Ave. Condo., Ass'n v. South Carolina Ins. Co.*, 58 F.Supp.2d 499 (D.N.J.1999). In addition, Defendant argues that Plaintiff is not entitled to interest on the SFIP benefits

---

**7.** Plaintiff asserts that because Defendant receives an adjuster's commission whether it pays or denies a claim and that the reimbursement it is entitled to for litigating claims constitutes a greater benefit to Defendant than the reimbursement it would have received for paying the claim, Defendant has an incentive to deny claims. This assertion is without merit. Not only is the commission rate the same regardless of whether it is on payment of a claim or litigation of a claim, but a WYO insurer is not entitled to reimbursement for litigation of claims in all cases, as discussed above. Plaintiff has provided no

support for his theory that a WYO insurer has an incentive to gamble on the *possibility* of an arguably larger payout for the litigation of a claim against the *certainty* of reimbursement for the payment of the same claim.

**8.** The Court DENIES Plaintiff's perfunctory request to amend, both because it is vague and also because it is untimely and lacks a showing of diligence required under *Johnson v. Mammoth Recreations Inc.*, 975 F.2d 604 (9th Cir.1992). In addition, amendment would be futile given the Court's ruling as a matter of law.

which he claims are owed to him, as a "no-interest" rule applies to claims against the U.S. Treasury, and an SFIP claim is such a claim, citing *Newton v. Capital Assur. Co.,* 245 F.3d 1306, 1310 (11th Cir.2001). In his opposition, Plaintiff asserts that because his bad faith claim is not preempted and his claim is not against the U.S. Treasury, he is entitled to both interest and punitive damages and Defendant's request to strike his prayers for this relief should be denied.

As the Court has found the Plaintiff's bad faith claim is preempted, the Court agrees with Defendant that Plaintiff is entitled to neither punitive damages nor interest for his breach of contract claim. Accordingly, Plaintiff's prayer for punitive damages and interest is STRICKEN.

## B. Defendant's Motion for Summary Judgment.

Defendant also moves for summary judgment on the ground that the SFIP's proof of loss requirement could not have been waived in the instant case, and that Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing must therefore be dismissed based on his failure to strictly comply with the terms of the SFIP. In the alternative, Defendant moves for summary adjudication of Plaintiff's bad faith claim on the ground that there are genuine disputes over 1) the existence of a covered flood, 2) whether Plaintiff's failure to submit the required proof of loss barred his claim and 3) whether the earth movement and land subsidence exclusions applied.[9] Plaintiff opposes the motion, arguing that FEMA's rules on when proof of loss may be waived do not have the force of law and

are irrelevant, and that even if they were binding, Defendant's argument is barred by the law of the case doctrine. In its reply, Defendant reiterates its position that Plaintiff's claim does not come within the limited circumstances in which waiver of the proof of loss requirement is authorized and discounts Plaintiff's law of the case argument.[10]

1. *Plaintiff Has Failed to Raise A Triable Issue of Material Fact Precluding Summary Adjudication on the Issue of Whether the SFIP's Proof of Loss Requirement Could Be Waived.*

The SFIP provides, in relevant part, that "we may, at our option, waive the proof of loss requirement *in certain cases.*" (SFIP at 26)(emphasis added). The Ninth Circuit did not construe this limitation in its opinion. *See Pecarovich v. Allstate Ins. Co.,* 317 F.3d 938, 939 n. 11 (9th Cir.2003) ("Allstate argues for the first time that it is precluded from waiving the proof of loss requirement by a guideline in the FEMA Flood Insurance Manual allowing waivers only for claims under $7,500. We do not decide this issue here.") In his opposition, Plaintiff argues that under the law of the case doctrine, Defendant is precluded from asserting its argument concerning the "in certain cases" limitation. Defendant disagrees, stating in its reply that had the Ninth Circuit intended to prohibit Defendant from raising this argument or to prevent this Court from ruling on it, the court would have made this explicit in its opinion.

Under the "law of the case" doctrine, a court may not decide issues al-

---

9. Although the Court has already determined that Plaintiff's bad faith claim is preempted by federal law, it will briefly address this alternative argument.

10. Because the Court has already determined that Plaintiff has long-since abandoned his fraud claim, it is unnecessary to address Defendant's arguments on this issue in its reply, although the Court finds that the arguments presented have merit.

ready "decided either expressly or by necessary implication" on appeal. *See Silber v. Mabon*, 18 F.3d 1449, 1453 (9th Cir. 1994). The Ninth Circuit expressly indicated that it was *not* deciding the issue of whether the proof of loss requirement could be waived only for claims of less than $7,500. Additionally, in issuing its decision, the Ninth Circuit expressed no intention to preclude this Court from interpreting the language of the SFIP and deciding on the issue on remand. Based on the foregoing, the Court finds that it is not precluded from ruling on this issue under the law of the case doctrine.

■ Defendant argues that it is entitled to summary judgment because FEMA's rules do not authorize waiver of the proof of loss requirement in the instant case, and that because Plaintiff failed to submit a proof of loss and Defendant could not have waived the requirement, Plaintiff's claim for breach of contract cannot survive. As indicated above, the SFIP limits circumstances under which the proof of loss requirement may be waived to "certain cases." Defendant asserts that FEMA rules clearly demonstrate that the "certain cases" for which waiver is available are claims for less than $7,500. For support, Defendant cites FEMA's NFIP Adjuster Claims Manual, which provides that "[t]he NFIP Proof of Loss Form is required on all advance payments, as well as on any paid claim. However, the Proof of Loss may be waived on claims under $7,500 ... If the loss is over $7,500, ... a Proof of Loss *must* be obtained." (Def.'s Req. for Jud. Not., Ex. 1 at VII–5.)(emphasis added) Defendant also cites FEMA's Flood Insurance Manual, which provides that "[t]he Proof of Loss form may be waived on claims for less than $7,500." (*Id.*, Ex. 2 at CL–1.)[11] According to Defendant, these manuals are incorporated by reference into the governing regulations and therefore have the force of law. *See* 44 C.F.R. 62.23(i)(1)("WYO companies will adjust claims in accordance with general Company standards, *guided by NFIP Claims manuals*") (emphasis added).[12] In the instant case, Plaintiff's claim was in excess of $200,000. Based on Defendant's understanding of the relevant law and the guidance promulgated by FEMA, Plaintiff's claim could not come within the exception for "certain cases" for which the proof of loss requirement could be waived. Accordingly, Defendant concludes that Plaintiff's failure to submit a proof of loss is a bar to his recovery.

In his opposition, Plaintiff argues that the FEMA manuals do not have the force

11. Other claims manuals and guidance contain similar language limiting circumstances in which the proof of loss requirement may be waived. *See id.*, Ex. 3, Write Your Own Claims Manual (1986)("[T]he Proof of Loss form may be waived by the NFIP on claims under $7,500."); Ex. 4, FEMA Adjuster Manual (1988) at 82 ("[T]he Proof of Loss form may be waived on claims under $7,500 ... If the loss if over $7,500, the final report must still be completed and a Proof of Loss *must* be obtained.") (emphasis added); Ex. 5, National Flood Insurance Program Audit Informational Bulletin 98–1 at 2 ("The program requires the submission of a signed proof of loss for claims in excess of $7500. Any waiver of this provision would impede and ultimately affect cases of litigation. Accordingly, companies are expected to receive and maintain a signed proof of loss in the claim file for all losses in excess of $7500.").

12. *See also* 44 C.F.R. Pt. 62, App. A, Art. II(A)(2)("Companies will be required to comply with FIA Policy Issuances and other guidance authorized by FIA or [FEMA]."); *Southpointe Villas Homeowners Ass'n v. Scottish Ins. Agency*, 213 F.Supp.2d 586, 593 (D.S.C.2002)(finding that a federal policy set forth in the NFIP's Flood Insurance Manual warranted uniform interpretation since allowing the development of alternative interpretations would result in a "patchwork quilt" of consequences, standing in the way of the NFIP's goal of insuring uniform applicability of its rules and policies).

of law and are therefore not binding upon Plaintiff or other policyholders. Plaintiff contends that only regulations that have been subjected to the APA notice and comment process may have the force of law, and that the FEMA internal manuals are therefore merely instructive. For support, he cites *American Bus Ass'n v. United States,* 627 F.2d 525 (D.C.Cir.1980) and *Community Nutrition Institute v. Young,* 818 F.2d 943 (D.C.Cir.1987). In addition, Plaintiff asserts that because Defendant claimed during discovery that the manuals were irrelevant, it cannot now contradict its prior position.

In its reply, Defendant argues that Plaintiff is mistaken in his belief that the $7,500 limitation is not incorporated by reference in the governing regulations and that Plaintiff's argument concerning Defendant's discovery responses is entirely meritless, as the waiver of proof of loss requirement argument had not been raised at that time. According to Defendant, the governing regulations specifically state that the manuals will be incorporated by reference, again citing 44 C.F.R. § 62.23(i)(1) and 44 C.F.R. Pt. 62, App. A, Art. II(A)(2). In the Defendant's view, these regulations put Plaintiff on notice that FEMA's claims manuals, including the $7,500 limitation for waiver of the proof of loss requirement, governed his claim.

Defendant also advances an alternative theory: namely, that regardless of whether the manuals are deemed part of the regulations, they constitute FEMA-prescribed guidance and are therefore entitled to controlling weight in interpreting what FEMA meant by "in certain cases." To support this assertion, Defendant cites *Bowles v. Seminole Rock & Sand Co.,* in which the Supreme Court stated that where the meaning of words used is in doubt, in interpreting an administrative regulation, the court may look to the agency's construction of that regulation, which "becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." 325 U.S. 410, 413–414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). Defendant argues that because FEMA's interpretation of "in certain cases" set forth in its manuals is neither plainly erroneous nor inconsistent with the regulation, it has controlling weight. *See Criger v. Becton,* 902 F.2d 1348, 1351 (8th Cir.1990)(in the NFIP context, FEMA's interpretation of its own regulation is entitled to deference). Furthermore, Defendant claims that without FEMA's guidance, the Court would have no basis upon which to interpret the "in certain circumstances" limitation. Defendant concludes that Plaintiff is not entitled to rely upon the SFIP for the position that the proof of loss requirement may be waived but to ignore FEMA's limitation upon such waiver.[13]

The Court agrees with Defendant that FEMA's interpretation of the "in certain circumstances" limitation, as set forth in its manuals, is controlling here. First, governing regulations clearly indicate that WYO insurers must be guided by the policy manuals promulgated by FEMA. The policy manuals state that proof of loss must be submitted for all claims in excess of $7,500. Plaintiff has cited no authority to contradict the plain language of the manuals. Second, an administrative agency's interpretation of its own regulation is entitled to deference. *See Criger,* 902 F.2d at 1351, citing *Gardebring v. Jenkins,*

---

13. With respect to Plaintiff's claim that the limitation is inapplicable because it was not subject to the APA's notice and comment procedure, Defendant asserts that Plaintiff's reliance on *American Bus* and *Community Nutri-* tion is unwarranted, as these cases involved situations in which an administrative agency attempted to make a new rule or regulation, rather than an agency's interpretation of a pre-existing regulation.

485 U.S. 415, 430, 108 S.Ct. 1306, 99 L.Ed.2d 515 (1988). FEMA's manuals and other guidance demonstrate its intent to limit those circumstances in which the proof of loss requirement may be waived to those claims for less than $7,500. Third, regarding Plaintiff's contention that Defendant is precluded from raising the argument based on its prior discovery responses, the Court agrees with Defendant that because the issue of Defendant's waiver of the proof of loss requirement had not been raised at that time, Defendant's response that the manuals were irrelevant was justifiable. Finally, Defendant is correct in its assertion that Plaintiff cannot cite a FEMA regulation to support his position that an insurer may waive the proof of loss requirement, but ignore the language governing the circumstances under which such waiver may be given.

Based on the foregoing, the Court finds that as a matter of law Defendant could not waive the proof of loss requirement for Plaintiff's claim, as it exceeded $7,500. Plaintiff has asserted no facts to support a finding that Defendant waived the proof of loss requirement, or that Plaintiff submitted a sworn proof of loss. As discussed above, "the conditions of an insurance policy offered pursuant to a congressionally mandated program, such as the NFIP, must be strictly observed." *Wagner v. Director, FEMA*, 847 F.2d at 518. Plaintiff has failed to raise a triable issue of material fact precluding summary adjudication on the issue of whether Defendant could have waived the SFIP's proof of loss requirement. Accordingly, Plaintiff's remaining claim for breach of contract must be DISMISSED.

2. *Plaintiff Has Failed to Raise a Triable Issue of Material Fact Precluding Summary Adjudication Under California Law.*

 In its recitation of the facts, Defendant states that following an inspection of the Property, Earl Beal, an NFIP representative in the Laguna Beach area, stated that the damage to the Property was not covered under the SFIP. (*See* Declaration of Richard Rossi ("Rossi Decl.") ¶¶ 3, 4.) Beal confirmed this determination in a written report to the NFIP. (Ex. 1 to Rossi Decl., 3/25/98 report from Earl Beal to Greta Richardson.) In his report, Beal indicated that the "[e]vent failed to meet test of a general condition of flooding as defined by this Program." (*Id.*)

Despite this determination, Rossi, the adjuster handling Plaintiff's claim, attempted to find a way to extend coverage for the loss, and to that end contacted Dick Allen, an NFIP official with the authority to override Beal's initial coverage determination. (Rossi Decl. ¶ 5.) Allen told Rossi that he would be willing to reconsider the coverage determination contained in Beal's report if Rossi provided him with (1) a geology report on conditions at the Property, (2) a structural engineering report with repair recommendations and (3) a cost estimate prepared by Rossi based on the engineers' repair recommendations. (*Id.*) Rossi informed one of Defendant's representatives of the conversation with Allen. (*Id.* ¶ 6.) Although under no obligation to do so, Defendant agreed to pay the cost of obtaining these reports. (*Id.*) Following this discussion, Rossi met with Plaintiff and informed him of Beal's initial coverage determination, Allen's agreement to reconsider the determination if the above-referenced documentation was prepared and Defendant's agreement to pay the cost of obtaining the reports necessary for Allen to reconsider Beal's coverage determination. (*Id.* ¶ 7.) Rossi agreed that Plaintiff could select the engineers to prepare the reports. (*Id.* ¶ 8.) During the summer of 1998, Rossi received the geological investigation report. (*Id.*) However, despite a number of requests made by

Rossi to the engineer retained by Plaintiff to prepare the structural engineering report and repair recommendations, Rossi never received a copy of the report. (*Id.* ¶ 9.) Because of this, Rossi could not complete the package necessary for Allen to reconsider the initial coverage determination. (*Id.*) [14]

In July of 1999, Beal contacted Rossi regarding the status of Plaintiff's claim, and shortly afterward faxed Rossi a copy of his "Position Restatement" report reiterating that Plaintiff's loss was not covered. (*Id.* ¶ 12 and Ex. 4.) In denying the claim, Dick Ray, unit claims manager for Allstate, reviewed Beal's two reports and the geological investigation report submitted by Ian Kennedy, and contacted Beal concerning his investigation of the claim and the NFIP's position. (Declaration of Dick Ray ¶¶ 1, 3, 6.) Beal informed Ray that the NFIP's position was that the loss was not covered and that if Defendant paid the claim, the payment would not be reimbursed with federal funds. (*Id.* ¶ 6 and Ex. 4.) Based on the foregoing, on October 20, 1999, Ray sent Plaintiff a denial letter, which was supplemented on November 10, 1999, indicating that the denial of coverage was based both on the absence of coverage and Plaintiff's failure to submit a sworn proof of loss. (*Id.* ¶¶ 3–4; Exs. 2,3.)

Defendant argues that based on the facts set forth above, Plaintiff's bad faith claim fails as a matter of law because the mere fact that an insurer withholds benefits does not establish a breach of the implied covenant of good faith and fair dealing under *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.,*

90 Cal.App.4th 335, 347, 108 Cal.Rptr.2d 776 (2001). Instead, Defendant asserts that where a genuine dispute exists concerning the obligation to pay, no bad faith liability may be imposed, citing *Fraley v. Allstate Ins. Co.,* 81 Cal.App.4th 1282, 1292, 97 Cal.Rptr.2d 386 (2000). Based on the facts presented, Defendant contends that (1) it is clear that there was a genuine dispute over the existence of a covered loss, (2) Plaintiff's failure to strictly comply with the SFIP by submitting a proof of loss created a genuine dispute over whether his claim was barred under federal regulations and (3) there was a genuine dispute over whether exclusions for earth movement and land subsidence applied, based on the report supplied by Plaintiff's engineer. Ian Kennedy, Plaintiff's engineer, submitted an engineering report indicating that the damage to the Property "occurred because the surface and near-surface supporting ground were underlain by artificial fill and landslide debris which were relatively compressible or collapsed when they became wet or saturated during the recent rainy season." (Rossi Decl., Ex. 2 at 20.) Defendant concludes that the foregoing facts created both a factual and a legal dispute as to whether the damage came within one of the policy's exclusions, thereby precluding its liability for bad faith as a matter of California law.

The Court agrees with Defendant that even if Plaintiff's bad faith claim was not preempted (and the Court has already determined that it is), it fails on this independent basis. The record clearly demonstrates that there was a genuine dispute

**14.** In his opposition, Plaintiff presents a different version of the facts. Plaintiff omits from his scenario the initial determination that the claim was not covered. Instead, Plaintiff asserts that Rossi assumed responsibility for preparing the "insurance company report." No mention is made of Plaintiff's responsibility for obtaining a structural engi-

neering report, nor does Plaintiff indicate that invoices for the engineers were ever submitted to Defendant for payment. Crucially, Plaintiff's version of the facts does not contain a single citation to admissible evidence. As such, the Court regards it as argument which is not entitled to any weight against the sworn statement of Richard Rossi.

over whether Plaintiff's claim was covered and whether an exclusion applied. Moreover, Plaintiff's failure to strictly comply with the SFIP by submitting a sworn proof of loss created a genuine dispute as to whether Plaintiff was entitled to coverage. Under these circumstances, Plaintiff cannot state a claim for bad faith under California law. Accordingly, the Court finds that Plaintiff has failed to raise a triable issue of material fact precluding summary judgment on this independent basis.[15]

## IV. CONCLUSION

Based on the foregoing, the Court rules as follows:

1. Defendant's Motion for Judgment on the Pleadings is GRANTED; and

2. Defendant's Motion for Summary Judgment is GRANTED.

Accordingly, Plaintiff's complaint is DISMISSED and Plaintiff's prayer for punitive damages and interest is STRICKEN.

15. Although Defendant did not bring its entire motion for summary judgment on the basis of the facts recited herein, the Court finds that these facts would support an independent basis for a grant of summary judgment in Defendant's favor. Plaintiff has failed to raise *any* admissible evidence to dispute the fact that a negative coverage determination with respect to Plaintiff's claim had already been made by an NFIP representative. Plaintiff would therefore be hard-pressed to state a claim for breach of contract, as denial of a claim alone does not constitute breach of contract. The Court finds that based on the prior coverage determination and Plaintiff's apparent failure to provide the documentation required for the determination to be reconsidered, dismissal of Plaintiff's complaint on this independent basis would be appropriate.